**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EaglePicher Incorporated, ) | No. CV 04-0870-PHX-MHM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Federal Insurance Company; and Zurich ) American Insurance Company ) | |
| ) | |
| Defendants. ) | |
| ) | |

Currently before the Court is EaglePicher Management Company's ("EPMC") Motion to Substitute itself for Plaintiff EaglePicher Incorporated ("EPI") (Dkt.#62) and Defendant Zurich American Insurance Company's ("Defendant" or "Zurich") Motion for Summary Judgment. (Dkt.#64). After reviewing the pleadings and holding oral argument on June 19, 2007, the Court issues the following Order.

**I.      Procedural History**

On December 3, 2003, EPI filed suit in Maricopa County Superior Court against Zurich and Federal Insurance Company asserting claims of declaratory judgment, breach of contract and bad faith. On April 27, 2004, this action was removed to this Court based upon diversity jurisdiction between the Parties. (Dkt.#1). On September 14, 2004, EPI and Federal Insurance Company entered into a settlement agreement leaving Zurich as the sole remaining

defendant. (Dkt.#26). On September 20, 2004, this Court conducted a Rule 16 Fed.R.Civ.P. Scheduling Conference in which the relevant dates for prosecution of the case were set. (Dkt.#27). On May 4, 2005, the Court was notified of filing of Chapter 11 bankruptcy by EPI in the United States Bankruptcy Court for the Southern District of Ohio and the instant case was stayed. (Dkt.#48). On January 10, 2007, this Court conducted a hearing to determine the status of the bankruptcy proceedings. (Dkt.#59). Based upon the Parties' representations and good cause shown, the stay was lifted. On January 24, 2007, the Court instituted its modified Rule 16 Scheduling Order. (Dkt.#61). On February 9, 2007, Movant EPMC filed its instant Motion to substitute itself for EPI based upon an asset purchase agreement from the bankruptcy proceeding which purportedly gives EPMC all of EPI's rights in the instant suit including its right to pursue the claims originally alleged by EPI. (Dkt.#62). On the same day, Zurich filed its instant Motion for summary judgment claiming any and all claims asserted by EPI or EPMC are barred by principles of judicial estoppel. (Dkt.#64). Both Motions are fully briefed and ripe for this Court's consideration. The Court will address first Defendant's Motion for summary judgment.

**II.      Defendant's Motion for Summary Judgment**

   **A.      Evidentiary Objection**

Defendant objects to the affidavit submitted by bankruptcy counsel, Mr. Elliot M. Smith ("Mr. Smith"), for EaglePicher Holdings, Inc., and multiple affiliates, including EPI and EaglePicher Technologies, LLC ("EPT") (collectively "Debtors") during the Chapter 11 bankruptcy proceedings before the United States District Court for the District of Ohio. Defendant objects to Mr. Smith's affidavit pursuant to Rule 602 of the Federal Rules of Evidence which provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove the personal knowledge may, but need not, consist of the witness' own testimony." Specifically, Defendant contends that Mr. Smith's affidavit is self-serving and does not indicate that Mr. Smith has first-hand knowledge of the bankruptcy proceedings and thus his testimony amounts only to speculation. However, in reviewing the affidavit of

1  Mr. Smith, while it does not expressly state that he possesses personal knowledge, a plain
2  reading of the affidavit demonstrates that Mr. Smith does purport to possess such knowledge.
3  Notably, Mr. Smith's affidavit expressly states that he is "legal counsel" for the Debtors
4  along with his rendition of matters in dispute during the bankruptcy action. Based upon Mr.
5  Smith's legal representation of the Debtors and indication that he does possess personal
6  knowledge of the relevant topics in dispute, the Court will overrule the Defendant's
7  objection.

8  **B.     Factual Background**

9  The instant lawsuit arises out of an insurance policy issued by Zurich to EPI covering the
10 period from August 1, 2002 through August 1, 2004. The policy provided coverage to
11 protect against losses incurred due to the criminal conduct of EPI's employees. On or about
12 November 4, 2002, EPI notified Zurich of a loss involving one of EPI's former employees,
13 Mr. John Franklin Brock. Zurich denied coverage of the claim and the instant lawsuit
14 commenced.
15 On or about April 11, 2005, EaglePicher Holdings, Inc., and multiple affiliates, including
16 EPI and EPT, the Debtors, filed voluntary jointly administered petitions for bankruptcy relief
17 under Chapter 11 of Title 11 of the United States Code in the United States District Court for
18 the Southern District of Ohio. On or about June 24, 2005, EPI filed a Statement of Financial
19 Affairs and accompanying Schedules of Assets and Liabilities. Despite the specific question
20 regarding "all suits ... to which [EPI] is or was a party within one year immediately preceding
21 the filing of the bankruptcy case," EPI did not disclose the instant suit against Zurich.
22 (Defendant's Statement of Facts ("DSOF") ¶¶ 17-19). In addition, another question of the
23 Statement of the Financial Affairs requested EPI to identify all "other contingent and non-
24 contingent unliquidated claims of every nature . . . ." (DSOF ¶ 21). Despite disclosing the
25 existence of other lawsuits, EPI did not disclose the existence of this lawsuit. (DSOF ¶ 24).
26 On July 28, 2005, EPI amended its Statement of Financial Affairs, but again, did not disclose
27 the existence of the instant suit. (DSOF ¶¶ 25). On January 25, 2006, through May 31, 2006,
28 the Debtors filed a Joint Plan of Reorganization and two subsequent amendments. Again,

1 the instant lawsuit was not identified as a pending lawsuit by EPI in any of those filings.
2 (DSOF ¶¶29-32). In addition, the instant lawsuit was not included in a March 2, 2006 filing
3 by the Debtors with respect to the pending suits to which EPI was involved.

4 While the instant lawsuit was not disclosed in EPI's Statement of Financial Affairs and/or
5 Schedule of Assets and subsequent filings, the suit was incorrectly disclosed, under seal, in
6 the Statement of Financial Affairs of EPT filed on June 29, 2005.[1] (EPMC Statement of Facts
7 ("SOF") ¶ 48). According to the affidavit of Mr. Smith, the disclosure of the instant suit as
8 an asset of EPT rather than that of EPI was due to a mistake. (Id., Exhibit 3). On June 29,
9 2006, the bankruptcy court entered an order confirming the Debtors' Plan. The bankruptcy
10 court determined that the value of the transferred assets of EPI was $161 million dollars.
11 (DSOF ¶ 36). The Plan became final on July 31, 2006. On January 16, 2007, after the issue
12 of the failure to disclose the instant suit as an asset of EPI in the bankruptcy proceedings
13 arose in the instant litigation, the bankruptcy Plan Trustee, U.S. Bank National Association
14 (the "Plan Trustee" or "Trustee") filed a Notice of Amendment to reflect the existence of
15 EPI's instant suit against Zurich. (DSOF ¶ 43; EPMC SOF ¶ 43). The Trustee stated that the
16 lawsuit was "inadvertently omitted" and that the asset, this lawsuit, was transferred to EPMC.
17 (DSOF ¶ 44). The Trustee's notice stated that the lawsuit against Zurich was valued at an
18 "unliquidated" amount.[2] (Id., Exhibit L).

19 **C.     Legal Standard**

20 A motion for summary judgment may be granted only if the evidence shows "that there
21 is no genuine issue as to any material fact and that the moving party is entitled to judgment
22 as a matter of law." Fed.R.Civ.P. 56(c). To defeat the motion, the non-moving party must

---

[1] While the filings of EPT's suits were filed under seal due to EPT's contractual relations with the United States Government, it appears that the filings were available for viewing by certain parties, including the creditors or EPI and parties able and willing to execute a binding non-disclosure agreement. (EPMC SOF ¶ 50).

[2] EPI previously filed a notice of claim with Zurich asserting damages of $8,826,029.70. (EPMC SOF ¶ 10).

- 4 -

1  show that there are genuine factual issues "that properly can be resolved only be a finder of
2  fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty
3  Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). The party opposing summary
4  judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but
5  ... must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e).
6  See Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586-87 106 S.Ct. 1348
7  (1986). The evidence must be viewed in the light most favorable to the nonmoving party.
8  Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc).

**D.     Analysis**

**(1) Judicial Estoppel**

The doctrine of judicial estoppel protects the integrity of the judicial process by precluding a party "from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001). "Judicial estoppel is 'intended to protect against a litigant playing fast and loose with the courts.'" Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990) (quoting Rockwell International Corp. v. Hanford Atomic Metal Trades Council, 851 F.2d 1208, 1210 (9th Cir. 1988). It "is an equitable doctrine invoked by a court at its discretion." Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990). Federal law governs the application of judicial estoppel in federal courts. Johnson v. Oregon Dep't of Human Res. Rehab. Div., 141 F.3d 1361, 1364 (9th Cir. 1998). The Supreme Court has identified several factors that may be considered when deciding whether to apply judicial estoppel: (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire v. Maine, 532 U.S. 742, 750, 121 S.Ct. 1808 (2001). These factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." Id.

In addition to the three factors identified by the Supreme Court, courts, including the Ninth Circuit, have identified another relevant factor to consider; that is, whether the party to be estopped acted inadvertently or with any degree of intent. Johnson v. Oregon Dept. of Human Resources Rehab. Div., 141 F.3d 1361, 1369 (9th Cir. 1998). As articulated in Johnson, "[j]udicial estoppel applies when a party's position is 'tantamount to a knowing representation to or even fraud on the court.'" Id. (quoting Ryan Operations G.P. v. Satiam-Midwest Lumber Co., 81 F.3d 355, 362-63 (3d Cir. 1996)); see also Wyler Summit Partnership v. Turner Broadcasting System, Inc., 235 F.3d 1184, 1190 (9th Cir. 2000) (citing Johnson and stating that "judicial estoppel requires a knowing antecedent representation by the person or party alleged to be estopped . . ."). "If incompatible positions are based not on chicanery, but only on inadvertence or mistake, judicial estoppel does not apply." Id. (citing In re Corey, 892 F.2d 829, 836 (9th Cir. 1989)); see also Helfand v. Gerson, 105 F.3d 530, 536 (9th Cir. 1997) ("[I]t is inappropriate [to apply judicial estoppel] when a party's prior position was based on inadvertence or mistake."); New Hampshire, 532 U.S. at 753 ("We do not question that it may be appropriate to resist application of judicial estoppel 'when a party's prior position was based on inadvertence or mistake.'"). [3]

---

[3] Defendant disputes the relevance of the intent of the party to be estopped in the context of the judicial estoppel inquiry. Notably, as cited by Defendant, there is authority suggesting that in the context of bankruptcy proceedings, inadvertence of the party to be estopped will be relevant "only when, in general the debtor either lacks knowledge of the undisclosed claims or has no motive for concealment, Shertz-Nelson v. AT&T Corp., 2003 WL 22047646 *7 (D.Ariz.2003) (quoting In re Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir. 1999)). However, this Court's reading of Supreme Court and Ninth Circuit authority demonstrates that the intent of the party is relevant to the Court's inquiry. Johnson, 141 F.3d at 1369; New Hampshire, 532 U.S. at 750 (noting that judicial estoppel "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment.") (citation omitted); see also Valdez v. JDR, LLC, 2006 WL 2038456 * 2 (D.Ariz. 2006) ("[t]he Ninth Circuit, among others, reads an additional requirement into the doctrine of judicial estoppel; the party to be estopped must have acted intentionally, not inadvertently."). In addition, other Circuits consider intent a relevant factor. See Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, (11th Cir. 2002) (In context of bankruptcy action, "doctrine of judicial estoppel applies in situations involving intentional contradictions, not simply error or inadvertence.").

- 6 -

1  Defendant contends that judicial estoppel should be invoked to bar the instant suit by
2  EPMI because of EPI's failure to disclose the instant suit during the bankruptcy proceedings.
3  Notably, "the Bankruptcy Code and Rules 'impose upon the bankruptcy debtors an express,
4  affirmative duty to disclose all assets, including contingent and unliquidated claims.'"
5  Hamilton, 270 F.3d at 785. However, in reviewing the relevant factors of the judicial
6  estoppel inquiry, the Court, in the exercise of its discretion, upon summary judgment review,
7  does not find that judicial estoppel should be applied to bar the instant suit.

### (a) "Clearly Inconsistent" Position of EPI

Based upon the evidence presented, it appears that EPI did originally take a "clearly inconsistent" position before the bankruptcy court.[4] As noted by Zurich, EPI, on multiple occasions prior to January 16, 2007, failed to disclose the existence of the instant suit as an asset to EPI during the bankruptcy proceeding. Thus, because the instant lawsuit does exist and EPMC, the assignee of EPI's assets, asserts the suit, the positions appear to be "clearly inconsistent." However, the Court notes that while the positions may be "clearly inconsistent," it is important to take into account the circumstances surrounding the "clearly inconsistent" positions. For instance, it appears that the instant lawsuit was disclosed as an asset during the Chapter 11 bankruptcy proceedings of the Debtors, albeit under the assets of the wrong affiliated entity, EPT. In addition, it appears that once the defect in the bankruptcy proceedings regarding EPI's assets was identified by Zurich, EPMC promptly notified the bankruptcy Plan Trustee of the defect and the Trustee filed an amendment to EPI's asset schedule. Thus, although EPI's original position was "clearly inconsistent," at

---

[4] As a preliminary matter, in opposition to EPMC's argument, the fact that EPMC was not the entity that failed to disclose the instant suit in the bankruptcy action, does not end the Court's inquiry in EPMC's favor. Notably, it is undisputed that EPMC was assigned the rights of EPI in this action. As such, as an assignee of EPI, EPMC steps into the shoes of EPI. See Pacific Coast Agr. Export Ass'n v. Sunkist Growers, Inc., 526 F.2d 1196, 1208 (9th Cir. 1975) (noting that assignee steps into the shoes of its assignors). However, this determination does not impact the Court's ultimate inquiry as to whether apply judicial estoppel to bar the instant suit taking into consideration the relevant equitable circumstances.

1 the present time, with the benefit of the recent amendment, the positions do not appear to be
2 entirely "clearly inconsistent." Under such circumstances, this Court considers this factor
3 to be neutral, at best, in support of the application of judicial estoppel to bar the instant suit.

### (b) Whether Party Succeeded Persuading Court to Accept that Party's Earlier Position

As argued by Zurich, it does appear that EPI was able to persuade a court, the bankruptcy court, to accept EPI's previously inconsistent position. Specifically, the bankruptcy court confirmed the Debtors' Plan which encompassed the previous omission of the instant lawsuit as an asset of EPI. However, while on its face, this factor could favor the application of judicial estoppel, as discussed above, the significance of EPI's omission is minimized by the Plan Trustee's recent amendment to properly disclose the instant suit as an asset of EPI. In addition, the instant lawsuit was timely disclosed by the Debtors during the bankruptcy proceedings, albeit in the context of an asset of another affiliate. Thus, the instant suit was considered and accounted for by the bankruptcy court within the broad scope of the Debtors' jointly administered bankruptcy. As such, the Court considers this factor to be neutral, at best, in support of the application of judicial estoppel to bar the instant suit.

### (c) Whether Party Would Gain Unfair Advantage or Impose Unfair Detriment on Opposing Party if not Estopped

Zurich does not argue that it will somehow be prejudiced should the Court allow the instant suit to continue. Rather, Zurich contends that based upon EPI's failure to disclose the instant lawsuit as an asset during the bankruptcy proceedings, it would gain an unfair advantage. Specifically, Zurich argues, with little explanation, that EPI would "profit twice if allowed to continue in this lawsuit." (Defendant's Motion, p.15). However, there appears to be no logical explanation or conclusion that can be drawn against EPI suggesting that it somehow benefitted or would benefit from the mis-scheduling of the instant suit during the bankruptcy proceedings. From a purely equitable point of view, were the Court to bar the instant suit based upon the bankruptcy proceedings, this Court, in effect, would be punishing the very creditors the bankruptcy proceedings were designed to protect. This is the case because EPMC is made up the creditors of EPI, which is now dissolved, and EPMC is a

- 8 -

separate and distinct entity of EPI established through the bankruptcy proceedings. (EPMC SOF ¶ 57). Thus, considering the lack of evidence suggesting that EPI would somehow benefit by permitting this suit to continue or that Zurich would somehow be prejudiced and the appearance that this Court would actually be penalizing EPI's creditors, EPMC, by applying judicial estoppel, the Court finds this factor cuts against the doctrine's application to this suit.

### (d) EPI's Intent in Not Disclosing Instant Lawsuit as EPI Assert During Bankruptcy Proceeding

While not conceding that an intent or an inadvertence element exists within the judicial estoppel inquiry, Zurich argues that even if such an element does exist, it favors dismissal of the instant suit on grounds of judicial estoppel. Zurich argues that EPI's intentional concealment or omission of the instant lawsuit as an EPI asset during the bankruptcy proceeding can be inferred from the circumstances. See Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355 (3d Cir. 1996) ("[C]ombination of knowledge of the claim at the time and motive for concealment in the face of an affirmative duty to disclose gave rise to an inference of intent sufficient to satisfy the requirements of judicial estoppel."). The circumstances supporting the existence of such intent argued by Zurich are: (1) EPI had knowledge of this lawsuit at the time it filed its schedule and disclosure of assets and liabilities in the bankruptcy proceedings; and (2) EPI had ample motive to conceal the instant suit from its creditors based upon the purported 8.8 million dollar recovery sought against Zurich.

However, Zurich's inferential considerations regarding EPI's failure to timely disclose the instant suit during the bankruptcy proceeding are not sufficient to demonstrate, for summary judgment purposes, that the EPI's conduct was intentional or anything other than inadvertent. Notably, as discussed above, EPMC provides the affidavit of counsel, Mr. Smith, representing the Debtors, including EPI and EPT, during the bankruptcy proceeding. Mr. Smith, under oath, provides testimony that the disclosure of the instant suit as an asset of EPT rather than EPI resulted from "an inadvertent error" or mistake. (EPMC SOF ¶ 48). Mr.

- 9 -

Smith's testimony combined with the lack of any logical explanation supporting a motive for such intentional concealment and the acknowledgment by the Plan Trustee disclosing the recent amendment of EPI's assets to include the instant suit provides support suggesting that the non-disclosure was inadvertent.

In light of the evidence submitted by EPMC there is, at the very least, a factual issue regarding EPI's state of mind in failing to timely disclose the instant suit as an asset of EPI during the bankruptcy proceedings. The evidence submitted by EPMC rebuts a finding of judicial estoppel based upon the circumstances surrounding the non-disclosure. Thus, this factor cuts against the application of judicial estoppel.

**(E)     Summary of Judicial Estoppel Inquiry**

Based upon the record presented, the Court finds it appropriate to deny Defendant's motion for summary judgment based upon judicial estoppel arising out the original non-disclosure of the instant suit as an asset of EPI during the bankruptcy proceedings. The Court finds that the circumstances surrounding EPI's non-disclosure do not warrant the harsh sanction of dismissal. Several factors support this determination: (1) the instant suit was disclosed in the Debtors' overall bankruptcy proceeding, albeit under the name of the wrong affiliate, EPT; (2) the Plan Trustee has filed an amendment to include the instant suit as an asset of EPI; (3) applying judicial estoppel in this case would essentially penalize the creditors of EPI; and (4) the record suggests that the original non-disclosure of the instant suit was likely inadvertent rather than intentional. Under such circumstances, pursuant to the Court's discretion, judicial estoppel is not warranted. As noted by the Third Circuit in Ryan, "judicial estoppel is an 'extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice.' It is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims . . . ." 81 F.3d at 365 (citation omitted).

**III.     EPMC's Motion to Substitute for EPI**

The Court, denying Defendant's Motion for summary judgment, will thus consider EPMC's Motion to substitute itself for EPI in this action. EPMC makes this Motion pursuant

1  to Rule 25(c) of the Federal Rules of Civil Procedure which contemplates the substitution of
2  parties in the case of a transfer of interest.  In support of its request to substitute itself for
3  EPI, EPMC cites the Asset Purchase Agreement ("APA") executed between EPI and EPMC
4  on July 31, 2006. (EPMC Motion, Exhibit 3).  Notably, the APA provides for the transfer of
5  "all claims, causes of action, choses in action, rights or recovery or setoff of any kind against
6  any Person who holds an Assumed Liability." (Id. § (xiii)).  In addition, EPMC notes that the
7  Plan Trustee has acknowledged that the right to pursue the instant suit "is properly regarded
8  as having been transferred to EPMC . . . ." (EPMC Motion, Exhibit 7).
9  In opposition to EPMC's Motion, Defendant argues that the Motion should be considered
10 "only after disposition of [Defendant's] Motion for Summary Judgment on Judicial Estoppel
11 Grounds." (Defendant's Response, p.2).  Defendant cites the fact that the instant lawsuit was
12 not disclosed as an asset of EPI when the bankruptcy court entered its Confirmation Order
13 approving of the sale of substantially all of the Debtors' assets to newly formed companies.
14 In addition, Defendant does not concede that the instant suit was included within the APA
15 asset transfer from EPI to EPMC due to the fact that the suit was not identified previously
16 as an asset of EPI during the bankruptcy proceedings.  Lastly; however, Defendant does
17 concede that if this lawsuit could be transferred it would only be transferred to EPMC due
18 to the bankruptcy trustee's acknowledgment of such.
19 In reviewing these arguments, the Court sees no reason to delay ruling on the instant
20 Motion to substitute filed by EPMC.  The Court, in denying Defendant's Motion for
21 summary judgment, has addressed the judicial estoppel argument cited by Defendant.  In
22 light of the evidence submitted suggesting an inadvertent mistake in originally omitting the
23 instant suit as an asset of EPI, the recent action taken by the Trustee to remedy the error, and
24 the plain language of the APA transferring assets of EPI to EPMC, the Court finds there is
25 good cause to grant EPMC's request to substitute itself as the plaintiff in this action.  Should
26 Defendant, through discovery, feel there is basis to challenge EPMC's standing or position
27 in this suit, it will be able to do so through an appropriate motion at a later date.
28 **Accordingly,**

1   **IT IS HEREBY ORDERED** granting EPMC Motion to Substitute itself for Plaintiff
2   EPI. (Dkt.#62)
3   **IT IS FURTHER ORDERED** denying Defendant's Motion for summary judgment.
4   (Dkt.#64).
5   DATED this 31st day of July, 2007.

_____
Mary H. Murguia
United States District Judge